[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of the Zoning Board of Review for the town of New Shoreham dated August 14, 1989. This appeal has been pending since then in the Washington County Superior Court. It was transferred to the Providence Superior Court for assignment and disposition by Order of the Presiding Justice dated December 2, 1992.
Jurisdiction in this Superior Court is pursuant to that Order, and § 45-24-20, R.I.G.L., 1956, as amended.
I
CASE TRAVEL — FACTS
In 1981, Vincent Ryan, and a corporation owned by him, The Atlantic Inn, Inc. purchased the real estate which is the subject matter of this zoning appeal. That real estate is located on Corn Neck Road in the town of New Shoreman, more commonly known as Block Island. It is designated as Lot 7-1 on Assessor's Plat #4. Since the advent of zoning in New Shoreham in 1967 that lot has been located in a Residential A Zone.
The property in question consists of land and a large residential structure. Since 1940, it had been owned and occupied by the Anderson family and constituted a single family seasonal dwelling for the Andersons and their family. On occasion, during its use by the Anderson family during the 1970 years, they permitted what has been described as "overflow" guest vacationers from a boarding house known as the "Breakers", which was located across the street from the Anderson home, to rent a few rooms in the upper front portion of the Anderson home. During those same 1970 years, the Andersons also rented rooms to family vacationers coming to Block Island. During one 1970's summer period they also rented some rooms to a tenant who in turn sublet the rooms to summer help employees who worked in some of the island hotels. (6/26/89 tr. 36-45)
In 1981 as noted earlier, Vincent Ryan and the Atlantic Inn, Inc. purchased the Anderson home. They renamed it the "Homestead". (Resp. Exh. A) The purpose of its purchase was to house summer employees and others from Mr. Ryan's Atlantic Inn. Mr. Ryan was apparently told, and led to believe, by the realty agent Jack Gray, that the building was a "rooming house". (6/26/89 tr. p. 55) Mr. Ryan testified at one of the zoning hearings that when he purchased the Anderson home, he was unaware of the extent of its use as a rooming house and that he relied upon what the realty agent told him. (6/26/89 tr. p. 51) Accordingly, shortly after its purchase, Mr. Ryan began to use the building to house summer employees from his Atlantic Inn and also, to use the building to do occasional laundry work for the Atlantic Inn.
Assuming that his new purchase, renamed the "Homestead," enjoyed a nonconforming rooming house use, Mr. Ryan, beginning in 1982, applied for, and was issued rooming house licenses from the town for the years 1982 through 1985, and once again in 1988. (8/14/89 tr. p. 13-15)
On July 30, 1985, the Minimum Housing Inspector for the town of New Shoreham inspected the "Homestead" and found various minimum housing code violations. Mr. Ryan was notified and cited for same and ordered to make the necessary repairs. (6/26/89 tr.Exh. 2) Mr. Ryan responded thereto by filing an application, in October 1985, with the New Shoreham Zoning Board of Review for permission to enlarge the Homestead. In his application, he requested variance relief so as to make renovations to the Homestead; raise a portion of its roof; extend or enlarge the building by twelve (12) feet to the rear and to expand the assumed nonconforming use of his building. He also requested a sideline variance on the south side of the Homestead, in order to accommodate the proposed expansion and enlargement construction. The Zoning Board in January 1986, granted the Ryan variance requests. It immediately thereafter realized that it had failed to give proper notice to an abutting property owner and rescheduled the hearing on the Ryan application. At the rescheduled meeting, on March 24, 1986, it voted to once again grant the Ryan variance requests. On that try, however, one of the Zoning Board hearing members abstained from voting. An appeal by various objectors immediately followed, and was filed in the Washington County Superior Court. Despite being aware of the appeal having been filed, Mr. Ryan nonetheless applied for a building permit. That request was denied and no appeal from that denial was taken. The following year in 1987, Mr. Ryan again applied for a building permit which was once again denied. This time, however, he filed an appeal from the Building Inspector's decision with the Zoning Board of Review and after hearing, that Board, on April 27, 1987 relying upon its earlier decision which had granted Ryan's requested zoning relief, reversed the Building Inspector's denial of the building permit, and ordered the permit to be issued. It was issued. At all times, it should be noted that the appeal from the Zoning Board's earlier decision was still pending. Despite acknowledged awareness of the pending appeal, Mr. Ryan commenced the renovations and expansion construction work on the "Homestead". He testified that he was aware of the appeal, and was aware of the risk involved, and simply elected to take the risk. (6/26/89) tr. p. 20) Mr. Ryan, in electing to take the risk was apparently unaware of the case holdings in Dresser v. A.T.G. Inc., 118 R.I. 66 (1977) andKent v. Zoning Board of Review, 102 R.I. 258 (1967), which ostensibly guaranteed a reversal of the Zoning Board's decision. Mr. Justice Caldarone, on August 15, 1988, citing Dresser andKent, supra, reversed the Zoning Board's March 1986 decision which had granted Mr. Ryan's requested variance, and, remanded the matter back to the Zoning Board. Upon remand, because of a change in the composition of the Board, the Ryan application required a de novo hearing. Coderre v. Zoning Board of Review,103 R.I. 575 (1968); Dresser v. A.T.G. Inc., supra at p. 68.
Shortly after Judge Caldarone's decision became final, no appeal having been taken, the New Shoreham Building Inspector revoked the Ryan building permit which he had previously issued because of the Zoning Board's earlier grant of the requested variance. He also issued a cease and desist order on December 1, 1988 and revoked the Certificate of Use and Occupancy which he had previously issued on the basis of the Zoning Board's earlier decision.
The remand de novo hearing on Mr. Ryan's variance requests, as well as Mr. Ryan's appeal from the Building Inspector's cease and desist order dated December 1, 1988 were both taken up at hearings that began on March 26, 1989 and extended through June 26, 1989 and August 14, 1989. At the conclusion of the August 14, 1989 hearing, the Zoning Board denied the Ryan appeal from the Building Inspector's December 1, 1988 cease and desist order and also denied the Ryan application and request for a variance. This appeal followed.
At the various hearings before the Zoning Board, it should be noted that the burden of proof, that is, the burden of proving that the Building Inspector's decision was improper and unlawful and, that Mr. Ryan was entitled by law and by the evidence to his requested expansion and sideline variance was upon Ryan. O.K.Properties v. Zoning Board of Warwick, 601 A.2d 953, 955 (1992);Souza v. Zoning Board of Warren, 104 R.I. 697, 699 (1968). His burden of proof here in this Superior Court is to persuade this Court that the Zoning Board abused its discretion and that its decisions are erroneous and invalid. Woodbury v. Zoning Board ofWarwick, 78 R.I. 319 (1951); Lough v. Zoning Board of NorthProvidence, 74 R.I. 366, 368 (1948).
II
SCOPE OF APPELLATE REVIEW OF ZONING BOARD DECISIONS Section 45-24-20, R.I.G.L. 1956, as amended, sets out with particular clarity the scope of review authorized in this Superior Court from appeals of decisions of local zoning boards.Section 45-24-20 reads in pertinent part as follows:
 45-24-20. Appeals to Superior Court. — * * * The court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: (1) in violation of constitutional, statutory or ordinance provisions; (2) in excess of the authority granted to the zoning board by statute or ordinance; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In performing its judicial duties as prescribed in § 45-24-20,
this Superior Court cannot substitute its judgment for that of the zoning board. However, this Court must examine the full record to determine whether the findings made by the zoning board were supported by substantial evidence. O.K. Properties v.Zoning Board of Warwick, 601 A.2d 953, 955 (1992), Salve ReginaCollege v. Zoning Board of Newport, 594 A.2d 878, 880 (1991),Apostolou, et al v. Genoves, et al, 120 R.I. 501, 507 (1978).
Substantial evidence has been defined as being more than a scintilla but less than a preponderance, and being relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Apostolou v. Genovesi, 120 R.I. 501, 508 (1978).
III
THE VARIANCE
The plaintiff-appellant Ryan here in this appeal contends that the Zoning Board erred in refusing to grant his requested variance. Noting again that it was his burden to prove to the Zoning Board that he was entitled to the variance relief he requested, it becomes necessary to identify the type of variance he was seeking. That variance, according to his application filed with the Zoning Board, was to enable him to enlarge and expand his alleged nonconforming rooming house use in the "Homestead", and to make repairs and renovations thereto, ostensibly to correct several minimum housing code violations that had been noted by the Minimum Housing Inspector some several years earlier in 1985.
In reviewing the record certified here by the Zoning Board it becomes evident that at the various hearings before the Board the plaintiff-appellant failed to distinguish between, and thus confused, both the so called "true variance" as opposed to the so called "Viti" or deviation form of variance. Gara Realty, Inc.v. Zoning Board of South Kingstown, 523 A.2d 855, 858 (1987). The "true" variance required him to present the Zoning Board with probative evidence that would show that by his being restricted to the permitted uses within the Residence A Zone he was being deprived of all beneficial use of his property and that the granting of the variance became necessary to avoid an indirect confiscation of his property. O.K. Properties v. Zoning Board ofWarwick, 601 A.2d 953, 955 (1992); Rozen v. Smith,120 R.I. 515, 519 (1978). There is no such probative evidence in the certified record to support any possible finding of deprivation of all beneficial use. Simply put, the plaintiff-appellant failed to satisfy the unnecessary hardship standard of §45-24-19(c) R.I.G.L. On the record facts, the plaintiff-appellant can certainly use his "Homestead" for all of the residential uses permitted in a Residential A zone district. The fact that he wishes to make a more beneficial or profitable use of the "Homestead" as a rooming or boarding house is not a valid basis for the granting of a variance. Rhode IslandHospital Trust National Bank v. East Providence Zoning Board ofReview, 444 A.2d 862, 864 (1982); Somzk v. Zoning Board ofLincoln, 99 R.I. 255 (1965); Griffen v. Zoning Board ofBurrillville, 98 R.I. 233, 237 (1964). Accordingly, there is no substantial probative evidence in the record to support plaintiff-appellant's claim that he was entitled to his requested variance.
With regard to plaintiff-appellant's contention that the Zoning Board erred in denying his request for what he claims to be a so called "Viti" or deviation form of variance, he simply misconceives the nature and purpose of that form of relief. A deviation is for relief from restrictions in a particular zoning classification which govern a permitted use,
such as lot line setbacks, limitations on height, on-site parking and minimum frontage and setback requirements. Felicio v.Fleury, 557 A.2d 480 (1989); Bamber v. Zoning Board of Reviewfor Foster, 591 A.2d 1220, 1223-1224 (1991). The true variance is a form of relief from zoning restrictions on use of land, a deviation is a form of relief from the zoning ordinance which regulates the manner in which a permitted use may beimplemented. V.S.H. Realty, Inc. v. Zoning Board of EastGreenwich, 120 R.I. 785 (1978). The plaintiff-appellant's burden of proof on his request for a Viti or deviation form of relief is of course entirely different from his burden of proof for a "true variance". On the deviation request, he need only demonstrate an adverse impact from the zoning regulation which amounts to more than a mere inconvenience. Gara Realty, supra, 585 A.2d at 858 (1987).
On the present facts, however, the plaintiff-appellant's "Homestead" is located in a Residential A Zone. In that zone, a rooming or boarding house use is not a permitted use. It is aprohibited use. Since a "Viti" form of variance, or as now designated, a deviation form of relief is only available to obtain relief from restrictions which govern a permitted use in a particular zone classification, it becomes abundantly clear that that deviation form of relief was not available to the plaintiff-appellant. V.S.H. Realty, Inc. v. Zoning Board of EastGreenwich, 120 R.I. 785 (1978); Health Havens v. Zoning Boardof East Providence, 101 R.I. 258, 263 (1966).
Unnoticed by the Zoning Board, as well as the parties with regard to plaintiff-appellant's application for variance relief, both "true variance" as well as deviation relief, which has been defined as a form of variance, is the fact that he came to the Zoning Board claiming his right to use of the "Homestead" to be anonconforming use. Under the case holdings in Winters v.Zoning Board of Warwick, 80 R.I. 275, 278-279 (1953); and Zuenav. Cranston Zoning Board of Review, 102 R.I. 299 (1967) a request to a Zoning Board of Review for an exception or variance is addressed to the Board's discretion, and precludes assertion of any claim of an applicant's right to a nonconforming use of the premises involved. Notwithstanding what was said in both theWinters and Zuena cases, supra, the plaintiff-appellant's alleged nonconforming use is not a permitted use in the Residence A Zone in which the "Homestead" is located and accordingly under the circumstances present here, the Viti or deviation form of relief was not available to or for that property in this proceeding. Zuena v. Cranston Zoning Board,102 R.I. 299, 300 (1967). The same inability to qualify for deviation relief would also exist if plaintiff-appellant's use of his property was by virtue of a special exception previously granted, Verdecchia v. Johnston Town Council, et al,589 A.2d 830, 832 (1991).
The "Viti" or deviation form of relief was not available to the plaintiff-appellant in his application to the Zoning Board in this particular proceeding. The use being made by him of the "Homestead" is not a permitted use in the Residence A Zone in which the property is located. Northeastern Corp. v. ZoningBoard of New Shoreham, 534 A.2d 603, 605 (1987); Gara Realty,Inc. v. Zoning Board of South Kingstown, 523 A.2d 855, 858 (1987); V.S.H. Realty, Inc. v. Zoning Board of East Greenwich,120 R.I. 785 (1978); Health Havens Inc. v. Zoning Board of EastProvidence, 101 R.I. 258, 263 (1966); Viti v. Zoning Board ofProvidence, 92 R.I. 59 (1960).
IV
THE APPEAL FROM THE BUILDING INSPECTOR'S ORDER
On December 1, 1988 the New Shoreham Building Inspector issued a cease and desist order to the plaintiff-appellant and revoked the building permit that had been earlier issued so as to permit the enlargement and renovation of the "Homestead". Plaintiff-appellant claims here that such order and revocation were illegal. An examination of the record clearly discloses that plaintiff-appellant's contention is without merit.
It is well settled law in this State that a building inspector has no legal authority to issue a building permit for construction that does not conform precisely to the terms and requirements of the pertinent provisions of the zoning ordinance applicable to the land in question. Zeilstra v. BarringtonZoning Board, 417 A.2d 303, 308 (1980); Ajootian v. ZoningBoard of Review, 85 R.I. 441, 445 (1957). His only authority is to determine if the proposed construction conforms precisely to the pertinent provisions of the zoning ordinance. Arc-Lan Co. v.Zoning Board of North Providence, 106 R.I. 474, 476 (1970). If the proposed construction does, he must issue the permit, if it does not, he cannot issue a legal permit. Town of Charlestown v.Beattie, 422 A.2d 1250 (1980). In this case, on the particular facts present, the plaintiff-appellant could not legally obtain a building permit for his proposed construction. He had no authority to ignore side line restrictions, and under both the 1967 and 1989 Zoning Ordinances no authority as he admits in his brief (p. 3) to enlarge or expand a nonconforming use,assuming that he in fact did have nonconforming use rights in the "Homestead". Accordingly, plaintiff-appellant sought variance relief from the Zoning Board. In March 1986, the Zoning Board granted his requested variance relief. An appeal from that Zoning Board decision was duly filed in the Washington County Superior Court. While that appeal was pending the plaintiff-appellant applied for a building permit, which was denied by the Building Inspector. The following year, in 1987, plaintiff-appellant once again, while the appeal was still pending, applied for a building permit which was again denied. He took an appeal from that denial to the Zoning Board. On April 27, 1987 the Board, relying upon its March 1986 decision, upheld the plaintiff-appellant's appeal from the Building Inspector's denial of his request for a building permit. It is clear from the record, that absent the Zoning Board's March 1986 decision, it could not have, and would not have, ordered the Building Inspector in 1987 to issue the building permit. On August 15, 1988, Judge Caldarone entered his decision on the appeal from the Zoning Board's March 1986 decision. He reversed the Board's action and remanded the matter back to the Board for a de novo hearing. No appeal was taken from Judge Caldarone's decision.
At this point in the travel of this case, there remained absolutely no legal authority for the continued legal existence of the building permit. Accordingly the Building Inspector properly revoked it and issued his cease and desist order. After the completion of the de novo hearing before the Zoning Board, the plaintiff-appellant failed to meet and carry his burden of proof on his request for variance relief and his request therefore was denied. As a result, there still remained no legal basis to support the original issuance of the building permit in question, and no legal basis to question the Building Inspector's action in revoking that permit.
The plaintiff-appellant apparently misconceives both the facts as well as the pertinent law that applies to those facts. He assumes, without evidentiary basis, that his property, the "Homestead", enjoys nonconforming use status. In addition, he assumes that his assumed nonconforming use right stems from the 1989 New Shoreham Zoning Ordinance. He fails to realize that in 1967 the town of New Shoreham enacted its original zoning ordinance. (Chapter 33, Revised Ordinances of the Town of NewShoreham.) By that Ordinance the Anderson Home, now the "Homestead" was located in a Residence A Zone. In that Residence A Zone, rooming or boarding houses were prohibited.
Accordingly, in order for plaintiff-appellant to legally establish his right to a nonconforming use he had to show thatprior to 1967 the Anderson Home — "Homestead" property had beenlawfully used as a rooming or board house. At the hearings before the Zoning Board he initially took the erroneous position that he did not have to prove the existence of a nonconforming use. (6/26/89 tr. p. 60-63) He assumed that because the building inspector never questioned the use of the Homestead for rooming house use since 1981, that such non-action served to create or confirm the existence of a nonconforming use. (6/26/89tr. p. 59-63). A nonconforming use can only be established by evidence of a lawful use having been made of the Anderson Home — "Homestead" property prior to 1967 and not by any inaction of public officials or by any unlawful use after 1981.Paolella v. Zoning Board of Providence, 84 R.I. 163, 167 (1956). The term "non-conforming" is a word of art and indicates a lawful use that preceded the enactment of the applicable zoning ordinance. Town of Scituate v. O'Rourke, 103 R.I. 499, 503-504 (1968).
 "A non conforming use is a particular use which does not conform to the zoning restrictions applicable to certain property but which use is protected against the restrictions because it existed lawfully prior to the effective date of the zoning ordinance and has continued unabated since that time." Town of Scituate, supra, p. 503
The plaintiff-appellant in this appeal now apparently recognizes his error before the Zoning Board in failing to present evidence that could perhaps have legally established the existence of a nonconforming use in the "Homestead". He now contends that his right to a nonconforming use is to be determined by the March 4, 1989 New Shoreham Zoning Revision Ordinance and not the 1967 Zoning Ordinance. Such contention is without merit. The 1989 Zoning Ordinance is in law considered to be a "continuation of the original and not a new ordinance."Health Havens. Inc. v. Zoning Board of Review, 101 R.I. 258, 264 (1966).
The certified records of the March 27, 1989, June 26, 1989 and August 14, 1989 hearings clearly disclose the existence of more than substantial evidence to support the findings made by the three members of the Zoning Board with regard to plaintiff-appellant's failure to prove the existence of his assumed nonconforming use in the "Homestead". The testimony and affidavit evidence presented to the Zoning Board from Laura A. Anderson; Russell W. Anderson; Nelson O. Clayton; Julia Smith Cooke; Vincent McAloon; Bernadette Taylor and R. William Anderson would clearly permit the three Zoning Board members to conclude that prior to 1967 when the first New Shoreham Zoning Ordinance was adopted, the Anderson Home was being used as a single family seasonal residence home by the Anderson family, and had been so used since 1940. The 1967 Zoning Ordinance as well as the 1989 Zoning Ordinance placed the property in a Residence A zone district. The record shows that starting in the 1970's, the Anderson family on occasion did rent four rooms on the second floor of their home to accommodate hotel "overflow" guests. Later in the 1970's the record shows that they did sublet their home to a person who in turn sublet rooms out to summer hotel employees. That evidence, however, along with plaintiff-appellant's evidence regarding his 1982-1987 rooming house licenses, issued upon the erroneous assumption that plaintiff-appellant's use was a valid use, or his evidence as to the rooming house fixture tax assessments made thereafter, cannot transform his unlawful use into a legal nonconforming use. Paolella v. Zoning Board ofProvidence, 84 R.I. 163, 166 (1956); Town of East Greenwich v.Day, 119 R.I. 1,5 (1977). The room rentals and single season subletting for roomers in the 1970's were not in compliance with the then existing Residential A zoning requirements. In fact, such use was a prohibited or illegal use, despite the fact that it went unquestioned. That illegal use, all after 1967, could never ripen or transform itself into a legal nonconforming useprior to the 1967 Zoning Ordinance. Town of Scituate v.O'Rourke, 103 R.I. 499, 503 (1968). Plaintiff-appellant's attempt here to effectuate such retroactive transformation can be best likened to the making of a horse chestnut into a chestnut horse.
The plaintiff-appellant had the burden of proving his claimed nonconforming use, and the extent, in any thereof. See, e.g.Souza v. Zoning Board, 104 R.I. 697, 699 (1968); Gara Realty,Inc. v. Zoning Board of Review, 523 A.2d 855, 857 (1987). The statements of his counsel (6/26/89 tr. pp. 29-35; 60-63) with regard to what he conceived the history of the property's use to be, could not be relied upon or considered by the Zoning Board to be competent probative evidence such as would permit the Board to make findings of fact thereon. Statements of counsel do not constitute evidence. See, e.g. Lincoln Building Association v.Zoning Board of Warwick, 105 R.I. 332, 334 (1969); Migliacciov. Zoning Board of Providence, 99 R.I. 101, 104 (1964); Pettinev. Zoning Board of Providence, 96 R.I. 404, 411 (1963). The evidence that plaintiff-appellant was required to present to the Zoning Board in order to meet his burden of proof was not just any evidence, but instead, evidence which had probative force due to its competency and legality. Salve Regina College v. ZoningBoard of Newport, 594 A.2d 878, 880 (1991); Thomson MethodistChurch v. Zoning Board of Pawtucket, 99 R.I. 675, 681 (1965).
Plaintiff-appellant, when before the Zoning Board, failed to carry his burden of proof as evidenced by the three negative votes of three members of the Zoning Board. Those three members had every right, based upon the record evidence, to vote as they did. This Court cannot, by law substitute its judgment for their when their findings, especially with regard to the claimed nonconforming use, are clearly supported by the overwhelming record evidence.
The plaintiff-appellant's appeal as it concerns the decision of the Zoning Board in denying his variance relief and in affirming the Building Inspector's action and decision is without merit and is accordingly denied and dismissed.
SUMMARY CONCLUSION
A review of the record of the hearings certified to this Court clearly indicates that the Board had before it sufficient legal evidence, being more than substantial, upon which to base its decisions. That being so, it thereupon became the plaintiff-appellant's burden to persuade this Court that the Board abused its discretion. Woodbury v. Zoning Board ofReview, 78 R.I. 319 (1951). Plaintiff has failed to do so. This Court in reviewing the certified record, finds nothing therein which is in violation of any constitutional, statutory or zoning ordinance provision; finds nothing therein to suggest that the Board acted in excess of the authority granted to it by law; finds that the Board's procedure was lawful and that its decisions are not affected by any error of law.
The Court further finds that the Board's decisions are not clearly erroneous in view of the reliable, probative and substantial evidence contained in the record; are not arbitrary or capricious, and are not characterized by any abuse of the Board's discretion. Accordingly, pursuant to the specific legislative mandate contained in § 45-24-20, R.I.G.L.,1956, as amended, this Court must and does, deny and dismiss the plaintiff-appellant's appeals.
Counsel will prepare and submit an appropriate judgment for entry by the Court within ten (10) days.