[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an appeal from a decision of the Town of Johnston Zoning Board of Review (Appellee or Board). Appellant, Dicon Corporation, Inc. (Appellant or Dicon) seeks reversal of the Board's denial of Dicon's application for dimensional variances on two neighboring lots. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
The subject lots are identified as Assessor's Plat 12, Lot 55, located at 32 Meriline Avenue (Lot 55), and Assessor's Plat 12, Lot 53, located at 8 Craigie Avenue (Lot 53). Lot 55 measures 7,338 square feet and is situated in an R-10 zoning district, while Lot 53 is comprised of 6,958 square feet and is located in an R-15 zoning district. According to the Department of Building Operations, however, Lot 55 measures 7,245 square feet and Lot 53 measures 7,127 square feet. (Corrente Ltr. dated July 22, 2003 at 1-2.) Under the Johnston Ordinances, a lot in an R-10 zone requires 10,000 square feet in order to build, and an R-15 zone requires 15,000 square feet. (Johnston Zon. Ord. Art. III, Sec. F.) The lots share a common border; however, they are not subject to merger because the lots have frontage on different streets. On June 9, 2003, the Johnston Town Council amended the zoning ordinance to require only 5,000 square feet minimum lot area in order to build in an R-10 zone, and 7,500 square feet to build in R-15 zones. (Johnston Zon. Ord. Art. III, Sec. L.)
Both Lot 53 and Lot 55 are owned by David H. DeCesare and Amato A.P. DeCesare. On August 18, 2003, Dicon, acting as authorized agent for the property owners, applied to the Board for dimensional variances on both lots in order to build a single-family dwelling on each lot.
At the hearing on October 30, 2003, David Iascone (Iascone), president of Dicon, appeared and testified in support of the application. Iascone testified that he sought to clean up and improve the lots, invest significant money, and put up nice homes. (Tr. at 2-3.) One neighbor testified in opposition, stating she thought allowing one house on two lots was more appropriate than two houses on two lots so as to avoid crowding the area. (Tr. at 8.) Another neighbor also objected to the applications, citing water runoff that leads to flooding problems on her property. (Tr. at 17-19.) Iascone responded by stating that he was required by law to control the water that would run off the property if he built a home on it. (Tr. at 25.) Ernest Pitochelli, a town councilman, spoke next as to the purpose behind the ordinance which, in his opinion, was to allow those who had owned substandard lots for many years to get dimensional relief, but not to allow builders to come in and develop substandard lots. (Tr. at 32-33.) Another neighbor testified in objection to the application, agreeing that there is a water runoff and drainage problem in the area, and that currently the water drains into the open lots but construction of homes would only exacerbate the problem. (Tr. at 37.) Next a neighbor testified that the only place the water and runoff could go is onto the lots in question. (Tr. at 41.)
The Board unanimously denied the dimensional variance applications on both Lot 53 and Lot 55, citing the fact that the lots were substandard as reason for the denial. (Tr. at 47-48.) Dicon timely filed the instant appeal. This Court renders a decision herein.
 STANDARD OF REVIEW
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d), which provides that:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may "not substitute [his or her] judgment for that of the zoning board if [he or she] conscientiously find[s] that the board's decision was supported by substantial evidence." Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Reviewof North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswellv. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). Thus, the reviewing court must examine the record to determine whether competent evidence exists to support the Board's decision.Compare New England Naturist Assoc., Inc. v. George, 648 A.2d 370, 371
(R.I. 1994) (quashing Superior Court judgment based on erroneous ruling), with von Bernuth v. Zoning Bd. of Review of New Shoreham,770 A.2d 396, 401-02 (R.I. 2001) (denying relief granted by zoning board based on lack of competent evidence and remanding to Superior Court). Additionally, "the trial justice [has] the authority to remand a case to the zoning board of review for further proceedings" but such action "should be based upon a genuine defect in proceedings in the first instance. . . ." Roger Williams Coll. v. Gallison, 572 A.2d 61, 62-63
(R.I. 1990).
 BOARD'S DECISIONS
Appellant argues that the Board's decisions with respect to both lots are comprised of boilerplate language, devoid of any factual support. Appellant suggests that certain Board members may have been affected by personal bias, leading to an arbitrary and capricious decision on the application for dimensional relief. Appellant further contends that the Board applied the "loss of all beneficial use" standard instead of the current "more than a mere inconvenience" standard, which was favored inLischio, 818 A.2d at 691. As such, Appellant states that the Board's decision is affected by error of law, was arbitrary and capricious, and constituted an unwarranted exercise of discretion. Thus, Appellant seeks reversal of the Board's decisions.
Appellee argues that the hardship Appellant seeks relief from is not due to unique characteristics of the land but rather the general characteristics of the land. Appellee also argues that Appellant has failed to show that the hardship that the owner will suffer without the variance amounts to more than a mere inconvenience. Appellant has also failed to show that the subject land cannot yield any beneficial use according to Appellee. Additionally, Appellee contends that granting the variance alters the general character of the area and impairs the comprehensive plan and ordinances. Finally, the Appellee argues that granting the variance will create a condition inimical to the public health, safety, morals, and welfare of the community. For each said contention, Appellee urges that more than a scintilla of evidence was presented.
Appellant argues that certain Board members may have been affected by personal bias, which leads to an arbitrary and capricious decision. At the outset, this Court notes the apparent inconsistency that is revealed after reviewing statements of two Board members. Anthony Verardo (Verardo), the Board's vice chairperson, opined that "this ordinance is being prostituted by builders." (Tr. at 23.) Such sentiment clearly indicates strong disfavor towards builders or developers, and Appellant is one. Later, Anthony Pilozzi (Pilozzi), the Board's Chairperson, stated that "our hands are tied by [the ordinance]. [Appellant] can put two [houses] there." (Tr. at 42.) Curiously, the Board recognizes a right to build two homes on the subject lots but then votes to deny such dimensional relief on the basis of the lots being substandard. This Court is of the opinion that such inconsistency — stating a right to relief sought after yet denying relief anyway without stating factual grounds — evidences the Board's arbitrary and capricious behavior.
Appellant further contends that the Board's decisions with respect to both lots are comprised of boilerplate language, devoid of any factual, evidentiary support. "The zoning board of review shall include in its decision all findings of fact and conditions. . . ." G.L. § 45-24-61; vonBernuth v. Zoning Bd. of Review of Town of New Shoreham, 770 A.2d 396, 401
(R.I. 2001). Our Supreme Court has instructed:
 "[The court] must decide whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles. Those findings must, of course be factual rather than conclusional, and the application of legal principles must be something more than the recital of a litany." Irish P'ship v. Rommel, 518 A.2d 356, 358-59 (R.I. 1986) (quoting May-Day Realty Corp. v. Bd. of Appeals of Pawtucket, 107 R.I. 235, 239, 267 A.2d 400, 403 (1970)).
"[T]here must be in the record competent evidence to support its findings, otherwise its action will be deemed an abuse of the discretion vested in it by the ordinance." Melucci v. Zoning Bd. of Review ofPawtucket, 10 R.I. 649, 652, 226 A.2d 416, 418 (1967) (citing Del Toro v. Zoning Bd. of Review of Bristol,82 R.I. 317, 107 A.2d 460 (1954)). "[T]here should be something in the decision to inform [the reviewing court] of the grounds and basis [of the decision.]" DelToro, 82 R.I. at 321, 107 A.2d at 462.
Overall, our Supreme Court noted, "[i]t is the function of the Superior Court to "examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Mill RealtyAssocs., 841 A.2d at 672 (quoting DeStefano,122 R.I. at 245, 405 A.2d at 1170 and citing Apostolou,120 R.I. at 507, 388 A.2d at 824). Without adequate findings of fact, "it would be difficult to sustain the board's decision . . . in view of the inadequate record kept by it and also because of the inadequacy of the statement summarizing its decision." Sciacca,
769 A.2d at 585 (quoting Souza v. Zoning Bd. of Reviewof Warren, 104 R.I. 697, 699-700, 248 A.2d 325, 327
(1968)). With respect to variance applications, our Supreme Court also "caution[ed] zoning boards and their attorneys to make certain that zoning-board decisions on variance applications . . . address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d)."Sciacca, 769 A.2d at 585. Additionally, our Supreme Court has cautioned that "because of the complicated legal questions incident to all zoning hearings, zoning boards should avail themselves of the legal service of their municipal legal departments." Sciacca, at 585-86 (quoting Souza v. Zoning Bd. of Review of Warren,104 R.I. 697, 699-700, 248 A.2d 325, 327 (1968)).
The findings of fact contained in the decisions do not constitute facts, but rather are merely the Board's conclusions which are unsupported by evidence. IrishP'ship v. Rommel, 518 A.2d 356, 358-59 (R.I. 1986) (stating zoning board's token consideration in decision amounted to "recital of a litany"); Hopf v. Bd. ofReview of City of Newport, 120 R.I. 275, 230 A.2d 420
(1967) (stating conclusional or insufficient evidence warrants reversal of zoning board decision). In this case, the Board's decisions on both Lot 53 and Lot 55 amount to nothing more than the boilerplate language found in the standard for granting a dimensional variance. The two decisions, though applicable to different lots, differ only insofar as to distinguish the lots. Appellant correctly points out that the written decisions are nearly identical, substituting only the lot number, square footage, and zoning district but retaining boilerplate findings and conclusions. (Appellant's Memo. at 4-5.) Indeed, both written decisions of the Board contain the following findings and decision:
"2. The petitioner is the developer of the property.
 3. The petitioner is proposing to build a single family home on the premises, pursuant to Zoning Ordinance 2002-21.
4. A variance is required for proposed use.
 5. The area surrounding the subject property contains single family use parcels.
 6. The premises in question are [sic] located in an R-10 zone.
 Based upon the foregoing, the Board denies the petitioner's application for a variance. As to the relief requested:
 1. The hardship from which the applicant seeks relief is not due to the unique characteristics of the subject land or structure rather than to the general characteristics of the surrounding area;
 2. The granting of the requested variance will alter the general character of the surrounding area and impair the intent or purpose of this Ordinance and/or the Comprehensive Plan upon which this Ordinance is based;
 3. The petitioner has failed to show that the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of the Johnston Zoning Ordinance;
 4. The petitioner has failed to show that the hardship suffered by the owner of the subject property if this variance is not granted amounts to more than a mere inconvenience;
 5. That granting of this variance will result in or create a condition that will be inimical to the public health, safety, morals and general welfare of the community."
Indeed, the second page of each decision is identical; merely a photocopy of the first. Both decisions on the second page state that the property in question is located in an R-10 zone, yet the record indicates that Lot 53 is located in an R-15 zone. The decision of Lot 53 leaves off the fifth finding, and goes from number four to number six. Even the Johnston Town Clerk's time and date stamp is identical down to the minute and second, both decisions having "01:47:45PM" as the time. A page of hollow conclusions unsupported by facts is insufficient to withstand judicial scrutiny. Decisions must be tailored to each property, to address the appropriate facts and evidence related to each individual piece of property, and set forth clear reasons that support the denial of relief. See Sciacca, 769 A.2d at 585. In this case, the Board has failed to do so, necessitating that this matter be remanded to it for adequate findings. This Court has nothing on which to consider the basis of the Board's denial of the dimensional relief because there are no factual findings that support its decision. Additionally, this Court notes that the fifth conclusion raises the "inimical to the public health, safety, morals, and general welfare" standard, which is the standard for granting a special use permit, not a dimensional variance. Compare Johnston Town Ord. § 26-19 (setting forth variance standard) with Johnston Town Ord. § 26-20 (outlining standard for special use permit). The Court finds that the Board applied the incorrect standard to the application, and as such, its decision is affected by error of law.
Additionally, Appellant argues that the Board applied the "loss of all beneficial use" standard instead of the current "more than a mere inconvenience" standard. Upon examination of the record, this Court, though not required to, did glean a portion of the reasoning behind the denial of the dimensional variance. Pilozzi stated that both applications were denied because "the lots do not meet the size requirement. It's fifteen thousand square feet. You've got seven thousand." (Tr. at 48.) This Court notes that simply not meeting the minimum area requirement is not a sufficient reason to deny a dimensional variance, when in fact, it is the very reason for seeking such a variance. See von Bernuth,770 A.2d 396 (granting dimensional variance from lot size restrictions);DiDonato v. Zoning Bd. of Review of Town of Johnston, 104 R.I. 158,242 A.2d 416 (1968) (allowing construction of single-family dwelling on dimensionally substandard lot). An ordinance must comport with the Enabling Act, which provides for the protection and continuation of legal non-conformances, such as the subject substandard lots. See §§ 45-24-38
and 45-24-39. The Board must also apply the correct legal standard, expressed by our Supreme Court in Lischio, which removed the requirement that the applicant prove the denial of all beneficial use, instead favoring the "more than a mere inconvenience" standard. See Lischio,818 A.2d at 691. Thus, the Board is instructed to reevaluate the evidence presented to it, and arrive at a decision based on factual evidence, which must be supplied in its written decision.
Additionally, under Zoning Ordinance 2002-21, only the reduced lot areas are to be considered; those are, 5,000 square feet in the R-10 zone and 7,500 square feet in the R-15 zone. Based on this Court's review of the record, Lot 55 exceeds the minimum 5,000 square foot lot area needed to build a single family residence under the ordinance. However, the Board must determine whether Lot 55 complies with all of the requirements found in the amended Article III, Section L under 2002-21 in order to determine whether a single-family dwelling can be built on it. If it does, then no dimensional relief would be necessary for Lot 55. If it does not, however, the Board must explicitly set forth facts that support why the lot does not meet the criteria to be considered a "buildable lot" under the Ordinance. This Court hereby instructs the Board to reconsider the applications in light of these principles under the revised Ordinance 2002-21.
 CONCLUSION
Based on a review of the record, this Court finds that the Board's findings of fact and decision were inadequate, amounting to unsupported conclusions, which do not provide this Court with the information necessary to determine whether the Board acted in violation of its statutorily defined power. As such, this Court is unable to determine whether the Board's decision is supported by the reliable, probative, and substantial evidence of record. Without such complete review, substantial rights of the Appellant are prejudiced. Accordingly, this Court hereby remands the matter to the Town of Johnston Zoning Board of Review for adequate findings of fact consistent with this opinion. This Court shall retain jurisdiction over this matter.
Counsel shall submit the appropriate order for judgment.